# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | )  No. CR-19-111-R |
| | ) |
| JASON SCOTT PEDRO, | ) |
| | ) |
| Defendant. | ) |

## UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

The United States submits this response in opposition to Defendant Jason Pedro's Sentencing Memorandum (Doc. 29) filed on October 25, 2019. In it, Mr. Pedro objects to the calculation of Base Offense Level as stated in the Presentence Investigation Report (PSR) (Doc. 24). This objection is founded on the belief that the firearm which was possessed by Mr. Pedro and for which he was ultimately charged, does not meet the statutory definition of a "semiautomatic firearm that is capable of accepting a large capacity magazine." This would make the calculation of the Total Offense Level substantially smaller thereby reducing the guideline range dramatically.

Further, Mr. Pedro claims because Congress let the broad prohibition of large capacity magazines expire in 2004 and because the large capacity magazine provision in United States Sentencing Guidelines § 2K2.1(a)(4)(B) is not supported by empirical data. However, the large capacity magazine enhancement is valid, the 2004 expiration of the

Violent Crime Control and Law Enforcement Act of 1994 does not undermine its application, and furthermore, the Guidelines are not required to be supported by empirical data. Therefore, neither argument warrants a reduced guideline range or a downward departure or variance for Mr. Pedro.[1]

**INTRODUCTION**

In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act (the "Act") that created 18 U.S.C. § 922(v), which prohibited the possession of "semiautomatic assault weapons," and 18 U.S.C. § 922(w), which prohibited the possession of a "large capacity ammunition feeding device," defined in 18 U.S.C. § 921(a)(30) and 18 U.S.C. § 921(a)(31), respectively. VIOLENT CRIME CONTROL AND LAW ENFORCEMENT ACT OF 1994, Pub. L. No. 103–322, §§ 110102, 110103, 108 Stat. 1796, 1996-99. The Act defined a "large capacity ammunition feeding device" as "a magazine, belt, drum, feed strip, or similar device manufactured after the date of enactment of the Violent Crime Control and Law Enforcement Act of 1994 that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition." *Id.* at 1999. The Act also called for a sentencing enhancement if a crime of violence or drug-trafficking crime

---

[1] Mr. Pedro also appears to argue that the enhancement should not exist because large capacity magazines are not per se illegal. Doc. 29, p. 12-13. This is nonsensical. Both Congress and the Sentencing Commission clearly have the authority to restrict or punish the possession of otherwise legal weapons by restricted individuals. *See United States v. Marceau*, 554 F.3d 24, 30, n.6 (1st Cir. 2009) ("We note that Congress has enacted several laws criminalizing the possession of otherwise legal weapons, depending on the status of the individual defendant. *See, e.g.,* 18 U.S.C. § 922(g)(1-9) (listing various groups of individuals for whom possession of any firearm is illegal)."); *United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009) ("[T]he Sentencing Commission has the authority to conclude that the possession of certain kinds of firearms by felons or other prohibited persons is especially dangerous, even if possession of such weapons by the general public is not otherwise prohibited by law.") (citing 28 U.S.C. §§ 994(c)(2) & (5)).

2

involved a semiautomatic firearm. *Id.* at 1998. The Sentencing Commission incorporated this enhancement into U.S.S.G. § 2K2.1(a) with specific reference to firearms defined in § 921(a)(30). U.S.S.G. § 2K2.1 (Nov. 1995); *see also* U.S.S.G. App. C, Amend. 522 (1995). The Act expired in 2004, *see* 108 Stat. 2000, but the Sentencing Commission retained the enhancement. U.S.S.G. § 2K2.1 (Nov. 2004). In 2006, the Sentencing Commission amended § 2K2.1(a), deleted the references to § 921(a)(30), and added language to apply the enhancement when the offense involved a "semiautomatic firearm capable of accepting a large capacity magazine." U.S.S.G. § 2K2.1 (Nov. 2006); *see* U.S.S.G. App. Ct, Amend. 691 (2006). It defined the term in Application Note 2 as follows:

> [A] 'semiautomatic firearm capable of accepting a large capacity magazine' means a semiautomatic firearm that has the ability to fire many rounds without reloading because at the time of the offense (A) the firearm had attached to it a magazine or similar device that could accept more than 15 rounds of ammunition; or (B) a magazine or similar device that could accept more than 15 rounds of ammunition was in close proximity to the firearm.

*Id.* This definition, and the relevant enhancement, remains the same today. U.S.S.G. § 2K2.1, comment. (n.2) (Nov. 2018).

Further, the firearm possessed by Mr. Pedro, meets the meaning of a "semiautomatic firearm capable of accepting a large capacity magazine" as defined in Application Note 2 as stated above. It also meets the definition of "firearm" in that the Bureau of Alcohol, Tobacco, Firearms and Explosives, has determined that the lower receiver in question is a firearm "defined in Title 18, U.S.C. Section 921(a)(3)(A)." (Exhibit 1).

## ARGUMENT

In response to the final Presentence Investigation Report filed on October 11, 2019 (Doc. 24), Mr. Pedro objected to the calculation of the Total Offense Level. *See* PSR ¶24. More specifically, Mr. Pedro objects to the Base Offense Level as determined by the United States Probation Office and used in the calculation of the Total Offense Level. *See* PSR ¶20 and ¶24. Mr. Pedro argues that the advisory sentencing guidelines should be adjusted from the PSR recommended 51 months to 63 months to a guideline range of 30 months to 37 months. *See* PSR ¶102 and Doc. 24, pg. 32. In response to this objection, the United States Probation Office cited *United States v. Harlan M. Davis*, 668 F.3d 576 (8th Cir. 2012). (Doc. 24, pg. 32). In *Davis*, the Mr. Davis objected to the application of United States Sentencing Commission Guidelines (U.S.S.G.) § 2K2.1, comment. (n.2), which states the definition of what qualifies as a "semiautomatic firearm that is capable of accepting a large capacity magazine." Mr. Davis objected to the application of this definition because the firearm that he possessed was inoperable at the time of possession. 668 F.3d at 576. However, at sentencing, testimony was given that although the gun was inoperable at the time of possession, it was "in 'fairly good condition' and 'could be fixed to fire,'" and could accept a magazine. *Id*. at 577. All of these descriptors apply to the firearm in this case. The court in *Davis* overruled the defendant's objection and applied U.S.S.G. § 2K2.1(a)(3) to this case. On appeal, the court affirmed this ruling, stating that "the government proved both that the semiautomatic firearm 'could be fixed to fire,' and that 'this weapon will accept that magazine.'" 668 F.3d 579. In the case before the court, the firearm meets both of these criteria in that it could be fixed to fire and that it will accept a magazine. In fact, the firearm

(lower receiver) more closely meets these necessary requirements in that it is not broken or needing to be fixed. All that is needed to make this weapon operational would be additional parts. In fact, the firearm appears to be new and in immaculate condition. (Exhibit 2). The defendant does not appear to be contesting the fact that the firearm in this case is capable of accepting a magazine nor does he appear to be contesting the fact that five large capacity magazines were located in the vehicle with the defendant and the firearm. (Exhibit 2).

In his Sentencing Memorandum, Mr. Pedro argues that the application of the facts in this case yield a different result than the facts pertaining to *Davis*. (Doc. 29). This opinion is primarily based in the belief that the firearm in this case falls under a separate subsection of the firearm definitions as stated in Title 18, U.S.C. § 921(a)(3). Specifically, that Title 18, U.S.C. § 921(a)(3)(A) was applicable in *Davis* while § 921(a)(3)(B) and (C) would be applicable in this case and therefore the semiautomatic firearm enhancement would not apply. (Doc. 29, pg. 9). However, this reasoning if flawed. First, *Davis* specifically refers to the *entire* definition section of Title 18, U.S.C. § 921(a)(3) and not any specific subsection. Mr. Davis argued that Title 18, U.S.C. § 921(a)(3)(A)(i) specifically does not apply to Note 2. 668 F.3d at 578. However, the ruling of the court implied that Note 2 applied to Title 18, U.S.C. § 921(a)(3) in its entity. 668 F.3d at 579. Mr. Davis focused his argument on the inoperability of the firearm that he possessed, rather than what section of Title 18, U.S.C. § 921(a)(3) was applicable to the specific firearm at issue. The only exception to the application of Note 2 would be if the firearm "'any firearm that … has been rendered permanently inoperable.'" *Id*. at 578. It is uncontested by any party in this case that the firearm possessed by Mr. Pedro was not rendered *permanently* inoperable.

5

Therefore, the application of Note 2 should occur in this case.

Finally, even if Mr. Pedro was correct in his assertion that Title 18, U.S.C. § 921(a)(3)(B) and (C) are not subject to the enhancement under U.S.S.G. § 2K2.1(a)(4)(A), he would still be subject to the enhancement in this case. The Bureau of Alcohol, Tobacco, Firearms and Explosives has determined that the lower receiver in question is a firearm "defined in Title 18, U.S.C. Section 921(a)(3)(A)." (Exhibit 1). The final line of this document states that "After examining the above listed firearm(s), it was determined that … property item #1 is/are a firearm(s) as defined in Title 18, U.S.C. Section 921(a)(3)(A)." This assessment by a qualified firearms expert makes Mr. Pedro's argument moot.

Mr. Pedro argues that congressional decisions made in recent history exempt him from be subject to the application of § 2K2.1(a). In June 2018, the Tenth Circuit addressed the effect of the 2004 repeal of the Act on the § 2K2.1(a)(4)(B) enhancement and explicitly found that "the guideline enhancement for possession of large-capacity magazines is not undermined by expiration of the congressional ban." *United States v. Ibanez*, 893 F.3d 1218, 1221 (10th Cir. 2018). There, the defendant appealed his sentence arguing it was based on § 2K2.1(a)(4)(B) which was unreasonable after the expiration of the federal ban. *Id.* at 1220. The Tenth Circuit found that it was within the district court's discretion to consider the reasonableness of the guideline and subsequently held the sentence was reasonable and should be affirmed. *Id.* However, rather than leave it there, the Tenth Circuit made a point to state that "[t]he outcome would remain the same even if we could otherwise consider the validity of the guideline." *Id.* The court discussed the expiration of the federal ban Mr. Pedro relies on here, and specifically found that "[i]n retaining the substance of the

provision, the Sentencing Commission determined that the public is endangered when prohibited persons possess large-capacity magazines" and that "the Sentencing Commission could rely on its own policy judgment notwithstanding the expiration of Congress's ban on semiautomatic weapons." *Id.* at 1220-21. Most importantly, the Tenth Circuit stated "[i]n our view, the Sentencing Commission validly exercised its policymaking judgment by adopting the [§ 2K2.1(a)(4)(B)] guideline enhancement." *Id.* at 1221.

As referenced in *Ibanez*, the Sentencing Commission did not let the statute's expiration go unaddressed. In 2006, the Sentencing Commission amended § 2K2.1(a), removed the reference to the expired statute, and broadened the enhancement to include any "semiautomatic firearm that is capable of accepting a large capacity magazine," but limited it to 15 rounds or more instead of the ten round limit prohibited by § 922(w). U.S.S.G. § 2K2.1(a)(4)(B), comment (n.2) (Nov. 2006). This is the same language as the enhancement at issue today. U.S.S.G. § 2K2.1(a)(4)(B) (Nov. 2018). Thus, the Commission unequivocally decided that a large capacity magazine should increase the guidelines a prohibited person in possession of a firearm faces. *E.g. Ibanez*, 893 F.3d at 1220. Furthermore, even before the Commission doubled down on the enhancement, the Tenth Circuit found that the repeal of § 921(a)(30) did not affect the validity of the enhancement, even when it still explicitly referenced the repealed statute. *United States v. Whitehead*, 425 F.3d 870, 871-72 (10th Cir. 2005). The Tenth Circuit was not alone. *See Marceau*, 554 F.3d at 30 (" We find no conflict between the lapse of the statutory assault-weapon ban and the imposition of a higher offense level for use of such a weapon by anyone in a class of 'prohibited persons.'"); *Myers*, 553 F.3d at 331 ("[T]here is, as a matter of

7

logic, no reason that the repeal of the assault-weapon ban should render invalid the Sentencing Commission's independent decision that the possession of these weapons by prohibited persons is especially dangerous."); *United States v. Roberts*, 442 F.3d 128, 130 (2d Cir. 2006) (finding the repeal of § 921(a)(30) did not affect the validity of § 2K2.1(a)).

Mr. Pedro's additional argument that the lack of empirical data supporting § 2K2.1(a)(4)(B) warrants a downward departure or variance is also unpersuasive. Quite simply, "a guideline range deserves consideration whether it is 'empirically based or not.'" *United States v. Franklin*, 785 F.3d 1365, 1370 (10th Cir. 2015); *see United States v. Wilbers,* 442 F. App'x 491, 495 (11th Cir. 2011) ("Our precedent provides that a lack of supporting empirical evidence does not, alone, render a guideline provision invalid."). As such, this Guidelines enhancement deserves consideration.

Moreover, the enhancement makes sense. It is logical that a person legally deemed too dangerous to possess a firearm would be considered more dangerous with a larger capacity magazine in or in close proximity to a firearm capable of using it. As the district court judge in *Ibanez* said, "[i]t is rational to distinguish high-capacity magazines for harsher punishment because . . . high-capacity magazines have the potential to spew out more bullets and cause more harm." 893 F.3d at 1220 (quoting the district court's rationale for not varying). Guideline enhancements for particular types of weapons are frequently based, not on "the number of deaths that they cause each year[,] but on their lethal capacity." *United States v. Price*, 649 F.3d 857, 861 (8th Cir. 2011) (affirming the reasonableness of the application of § 2K2.1(a)(4)(B) despite a lack of empirical data to support it). This is in part because there is a rational relationship between the prohibition of large capacity

magazines and public safety.  In *Heller v. District of Columbia*, the D.C. Circuit found the District's ban on magazines holding more than ten rounds survived intermediate scrutiny. 670 F.3d 1244, 1264 (D.C. Cir. 2011).  There, they relied on testimony that "[t]he threat posed by military-style assault weapons is increased significantly if they can be equipped with high-capacity ammunition magazines because, [b]y permitting a shooter to fire more than ten rounds without reloading, they greatly increase the firepower of mass shooters." *Id.* at 1263 (internal quotations omitted).  They also relied on studies that showed "guns used in shootings are 17% to 26% more likely to have [magazines holding more than ten rounds] than guns used in gunfire cases resulting in no wounded victims" and that "attacks with semi-automatics—including [assault weapons] and other semi-automatics with [magazines holding more than ten rounds]—result in more shots fired, persons wounded, and wounds per victim than do other gun attacks." *Id.* (citing Christopher S. Koper et al., U. Penn. Jerry Lee Ctr. of Criminology, *An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets and Gun Violence*, 1994–2003, at 51, 87, 97 (2004)) (alteration in original).  In addition, the D.C. Circuit noted that "the 2 or 3 second pause during which a criminal reloads his firearm can be of critical benefit to law enforcement." *Id.* at 1264 (internal quotations omitted).  The court found that "large-capacity magazines tend to pose a danger to innocent people and particularly to police officers, which supports the District's claim that a ban on such magazines is likely to promote its important governmental interests." *Id*.  There, the ban was even more restrictive than the enhancement at issue today with a capacity limit of ten instead of fifteen.  In short, the § 2K2.1(a)(4)(B) enhancement for large capacity magazines is valid, reasonable, and worth application

generally.

In addition, the application of that enhancement makes sense here. In the circumstances of this offense, Mr. Pedro arguably possessed a firearm and five fully loaded extended magazines. (Exhibit 2). Beyond that, Mr. Pedro's history includes two violent episodes where he committed domestic violence offenses, one of which occurred 2003 which is the same year that his children were removed from the custody of both of the their parents and placed with Mr. Pedro's mother. PSR ¶ 38, ¶52, and ¶83. Mr. Pedro has a history of being noncompliant with the terms and conditions of his probation. PSR ¶ 31, ¶32, ¶38, ¶44 and ¶45. He has a twenty-two year history of violating the law and continues to do so to this day. There is little doubt that the number of bullets Mr. Pedro's magazine could hold that day directly affected his dangerousness. (Exhibit 2). As such, the application of this enhancement is reasonable for this offense and for Mr. Pedro.

## CONCLUSION

Thus, considering the proper application of § 2K2.1(a)(4)(B), the nature and circumstances of this offense, and the history and characteristics of this defendant, the large

capacity magazine is clearly relevant and **does not** warrant the application of a reduced guideline range or a downward departure or variance.

Respectfully submitted,

TIMOTHY J. DOWNING
United States Attorney


s/ Mary E. Walters
MARY E. WALTERS
Oklahoma Bar No. 30281
Assistant U.S. Attorney
210 W. Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (office)
(405) 553-8888 (fax)
mary.walters2@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that on November 8, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Docket Activity to the following ECF registrant:

William P. Earley, Counsel for Jason Scott Pedro.

s/ Mary E. Walters
Assistant U.S. Attorney